UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GREGORY RODI, on Behalf of Himself and All Others Similarly Situated, § § § | No. |
| | CLASS ACTION |
| Plaintiff, § § | |
| vs. § § | COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS |
| EXPRESSJET HOLDINGS, INC., THOMAS M. HANLEY, LAMPHUNG NGO-BURNS, GEORGE R. BRAVANTE, JR., JANET M. CLARKE, KIM A. FADEL, JUDITH R. HABERKORN, SALVATORE J. BADALAMENTI, BONNIE S. REITZ, T. PATRICK KELLY, ALAN H. FREUDENSTEIN, EXPRESSJET, SKYWEST, INC., ATLANTIC SOUTHEAST AIRLINES, INC., and EXPRESS DELAWARE MERGER CO., § § § § § § § § § § § § § § | OF THE SECURITIES EXCHANGE ACT OF 1934 |
| Defendants. § § | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      This is a stockholder class action brought by plaintiff on behalf of the holders of ExpressJet Holdings Inc. ("ExpressJet" or the "Company") common stock against the Company, certain of its officers and directors, Express Delaware Merger Co. ("Express"), SkyWest, Inc. ("SkyWest"), and Atlantic Southeast Airlines, Inc. ("Atlantic Southeast"). This action arises out the defendants' violations of federal and state law in pursuing the proposed sale of ExpressJet to SkyWest for $6.75 per share in cash (the "Proposed Acquisition").

2.      The Proposed Acquisition is the result of an unfair and self-serving process. The price of $6.75 per share which resulted from this process materially undervalues the Company and is unfair to its stockholders.

3.      In pursuing the Proposed Acquisition, SkyWest is attempting to take advantage of ExpressJet's temporarily depressed stock price. The Company was severely affected by the economic recession. As the recession hit its peak, travel reached a near standstill. This downturn in travel, however, was temporary. The Company announced that flight traffic increased 24% in April 2010 and 23% in June 2010. Indeed, for the Company's most recent quarter it announced that its revenues increased 20% from the same quarter a year ago, from $170.6 million to $207 million. Moreover, ExpressJet recently announced that it has begun a cost-cutting and reorganization measure titled, "Operation: Green Light." Under Operation: Green Light, the Company was expected to see savings of $40 million a year.

4.      The consideration in the Proposed Acquisition fails to reflect the Company's true value and its improving financial condition. The Company's book value as of June 30, 2010, is $9.75 per share, $3 more than the consideration offered in the Proposed Acquisition. Further, in April 2008, SkyWest attempted to acquire the Company for approximately $180 million, $50 million more than what SkyWest is offering for the Company now. Yet at that time, ExpressJet said that the offer was an "opportunistic attempt to acquire the Company" below its true value.

5.     Despite ExpressJet's bright future as a result of its restructuring and the improving economy, shareholders will not be able to reap the long-term benefits as a result of the defendants' self-interested decision to sell the Company.  Specifically, in agreeing to the Proposed Acquisition, the Individual Defendants (as defined herein) have placed their own interests in securing for themselves valuable change-in-control benefits ahead of their duties to shareholders.

6.     The Proposed Acquisition was the culmination of a flawed process.  Once the Board of Directors ("Board") found its preferred acquirer for the Company, it refused to look for any other potential suitors.  The Board dismissed out of hand the idea that any other third party besides SkyWest would be interested in the Company, without even conducting a market check.  The Board also allowed the Company's senior management to participate in key meetings and negotiations.  Further, rather than ensuring that shareholders received the best price for their stock, the Board instead guaranteed that defendant Thomas M. Hanley ("Hanley") would receive substantial benefits in the Proposed Acquisition, despite having only joined the Company four months earlier.

7.     In order to ensure that the Proposed Acquisition is completed by their favored purchaser, the defendants agreed to preclusive deal protection devices.  The Agreement and Plan of Merger dated August 3, 2010 ("Merger Agreement") contains a $4 million termination fee and a no-solicitation clause.

8.     Worse still, on September 3, 2010, in an attempt to secure shareholder support for the unfair Proposed Acquisition, the defendants jointly issued a materially false and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy").  The Proxy, which recommends that ExpressJet shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company.  Specifically, the Proxy omits and/or misrepresents material information in contravention of §14(a) and §20(a) of the Securities Exchange Act of 1934 ("Exchange Act") regarding:

- 2 -

(a)     The sales process, including (i) the basis for the Board to determine that no other financial or strategic buyer other than SkyWest would be interested in acquiring the Company; (ii) the basis for the Board's decision to quickly and dramatically reduce the asking price for the Company; (iii) the basis for the Board's lack of interest in a transaction where any of the consideration for the Company would be in the form of SkyWest stock; and (iv) the role Continental Airlines played in the negotiation of the Proposed Acquisition; and

(b)     The data and inputs for the financial analyses conducted by ExpressJet's financial advisor, Goldman, Sachs & Co. ("Goldman Sachs"), including the Company's anticipated free cash flows and the reasons why the assumptions underlying the Company's financial projections relied up by Goldman Sachs were dramatically changed just prior to the Proposed Acquisition.

9.     As explained herein, the foregoing information is material to the impending decision of ExpressJet's shareholders whether or not to vote in favor of the Proposed Acquisition. As such, defendants' violations of §14(a) and §20(a) threaten shareholders with irreparable harm for which money damages are not an adequate alternate remedy. Thus, plaintiff seeks injunctive relief to ensure that defendants cure their breaches of fiduciary duty and violations of §14(a) and §20(a) before ExpressJet shareholders are asked to vote on the Proposed Acquisition and that defendants are not permitted to seek shareholder support of the Proposed Acquisition.

10.     In pursuing their unlawful plan to squeeze out ExpressJet's public shareholders, the Individual Defendants, who are directors and officers of ExpressJet, have breached their fiduciary duties of loyalty and care. The other defendants have aided and abetted ExpressJet's officers and directors' breaches of fiduciary duties. Thus, plaintiff also seeks injunctive relief to enjoin the Proposed Acquisition due to the Individual Defendants' breaches of their fiduciary duty.

### JURISDICTION AND VENUE

11.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the Exchange Act for violations of §14(a) and §20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder.

12.     Venue is proper in this District because ExpressJet has its principle place of business in this District.  Plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court.  Moreover, each of the Individual Defendants, as Company officers and/or directors, has extensive contacts with this District.

### PARTIES

13.     Plaintiff Gregory Rodi is a shareholder of ExpressJet, and has been at all relevant times.

14.     Defendant ExpressJet is a Delaware corporation that operates several divisions designed to leverage the management experience, efficiencies, and economies of scale present in its subsidiaries.  ExpressJet also makes strategic investments ranging from maintenance to corporate charter flights.  ExpressJet's subsidiary, ExpressJet Airlines, is one of the world's largest operators of regional aircraft – providing both commercial services to Continental Airlines, United Airlines, and corporate aviation flights.  Pursuant to the Proposed Acquisition, Express will be merged with and into ExpressJet and ExpressJet will continue as the surviving corporation.  ExpressJet's principal executive offices are located at 700 North Sam Houston Parkway West, Suite 200, Houston, TX.

15.     Defendant Thomas M. Hanley ("Hanley") is ExpressJet's President and Chief Executive Officer and has been since April 2010.  Hanley is also a director and has been since May 2010.

16.     Defendant Lamphung Ngo-Burns ("Ngo-Burns") is ExpressJet's Vice President and Chief Financial Officer and has been since September 2008.  Ngo-Burns was also Staff Vice President of Finance and Controller from 2005 to September 2008 and Senior Director and Controller from 2002 to 2005.

17.     Defendant George R. Bravante, Jr. ("Bravante") is ExpressJet's independent Chairman of the Board and has been since 2005 and a director and has been since July 2004.

18.     Defendant Janet M. Clarke ("Clarke") is an ExpressJet director and has been since May 2002.

19.     Defendant Kim A. Fadel ("Fadel") is an ExpressJet director and has been since May 2002.

20.     Defendant Judith R. Haberkorn ("Haberkorn") is an ExpressJet director and has been since June 2006.

21.     Defendant Salvatore J. Badalamenti ("Badalamenti") is an ExpressJet director and has been since October 2006.

22.     Defendant Bonnie S. Reitz ("Reitz") is an ExpressJet director and has been since July 2006.

23.     Defendant T. Patrick Kelly ("Kelly") is an ExpressJet director and has been since September 2007.  Kelly was also interim President and Chief Executive Officer from January 2010 to April 2010.

24.     Defendant Alan H. Freudenstein ("Freudentstein") is an ExpressJet director and has been since 2009.

25.     Defendant ExpressJet is a Delaware corporation that operates several divisions designed to leverage the management experience, efficiencies, and economies of scale present in its subsidiaries.  ExpressJet also makes strategic investments ranging from maintenance to corporate charter flights.  ExpressJet's subsidiary, ExpressJet Airlines, is one of the World's largest operators

of regional aircraft – providing both commercial services to Continental Airlines, United Airlines, and corporate aviation flights.  Pursuant to the Proposed Acquisition, Express will be merged with and into ExpressJet and ExpressJet will continue as the surviving corporation.  ExpressJet's principal executive offices are located at 700 North Sam Houston Parkway West, Suite 200, Houston, TX.

26.     Defendant SkyWest is a Utah corporation that offers scheduled passenger service through its subsidiaries, SkyWest Airlines and ASA, with approximately 2,300 daily departures to 217 destinations in the United States, Canada, Mexico, and the Caribbean.  Substantially all of SkyWest's flights are operated as either Delta Connection, United Express, or AirTran flights under code-share arrangements with Delta, United, or AirTran, respectively, with significant presence in Delta and United's key domestic hubs and focus cities.  SkyWest's principal executive offices are located at 444 South River Road, St. George, UT.

27.     Defendant Atlantic Southeast Airlines is a Georgia corporation and wholly owned subsidiary of SkyWest.  Atlantic Southeast Airlines generally provides regional flying to SkyWest's partners under long-term, fixed-fee code-sharing agreements.  Atlantic Southeast Airlines is the sole stockholder of Express.  SkyWest's stated intention is that ExpressJet Airlines will be merged with Atlantic Southeast Airlines following the closing of the transaction and receipt of all required regulatory approvals.  Atlantic Southeast Airlines's principal executive offices are located at 990 Toffie Terrace, Atlanta, GA.

28.     Defendant Express is a Delaware corporation and wholly owned subsidiary of SkyWest.  Pursuant to the Proposed Acquisition, Express will be merged with and into ExpressJet and the separate corporate existence of Express will cease.

29.     The defendants named above in ¶¶15-24 are sometimes collectively referred to herein as the "Individual Defendants."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

30.     Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in a change in corporate control, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant control premium.  This duty arises in at least the following three circumstances: (i) when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company; (ii) where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company; or (iii) when approval of a transaction results in a sale or change of control.  To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)     will provide the directors and/or officers with preferential treatment or benefits at the expense of, or which are not shared equally with, the public shareholders.

31.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and officers of ExpressJet, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

32.     Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties, and/or have aided and abetted such breaches, including their duties of loyalty and due care owed to plaintiff and the other public shareholders of ExpressJet.  The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing, and are obtaining for themselves personal benefits not shared equally by ExpressJet's public shareholders generally.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class (as defined herein) will receive adequate or fair value for their ExpressJet common stock in the Proposed Acquisition.

33.     The Individual Defendants have knowingly or recklessly breached their duties of loyalty, good faith, candor, and due care in connection with the Proposed Acquisition, and/or have aided and abetted therein.  As such, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon the Individual Defendants as a matter of law.

## THE UNFAIR ACQUISITION PROCESS

34.     On April 7, 2008, SkyWest offered to purchase ExpressJet for approximately $180 million.  That same day, ExpressJet received a letter from Continental stating that it negotiated terms of a new capacity purchase agreement ("CPA") with SkyWest that would become effective if SkyWest acquired ExpressJet.  ExpressJet rejected SkyWest's offer as being "opportunistic" and not reflecting the true value of the Company.  That offer was approximately $50 million more than the Proposed Acquisition but was summarily rejected by the Company.

35.    On April 25, 2008, ExpressJet issued a press release, filed on form 8-K with the SEC,

detailing why the offer was inadequate and subsequently rejected.  The press release states, in

pertinent part, as follows:

> ExpressJet Holdings, Inc. today announced that a Special Committee composed of
> independent outside members of its Board of Directors has unanimously rejected a
> proposal from SkyWest, Inc. to acquire the Company for [approximately $180
> million] in cash.

* * *

> The Special Committee reached the decision to reject the SkyWest proposal after
> careful consideration, including a thorough review of the proposal with Goldman
> Sachs & Co., its independent financial advisor, and Abrams & Laster LLP, its
> independent legal advisor.  In making its determination to reject the SkyWest
> proposal, the Special Committee considered a number of factors, including:

> - ***The Special Committee believes that the fair value of the Company's stock
>   is substantially higher that the current SkyWest proposal and
>   [approximately $180 million] proposed by SkyWest does not fully and fairly
>   reflect the inherent value of ExpressJet or its prospects, whether as a stand-
>   alone company or part of a larger entity.***

> - While the Special Committee recognizes that a combination of ExpressJet
>   and SkyWest would likely produce meaningful synergies, SkyWest's current
>   proposal does not deliver the value of these synergies to ExpressJet's
>   stockholders.  ***Therefore, the initial SkyWest offer is inadequate and
>   represents an opportunistic attempt by SkyWest to acquire the Company at
>   a price well below the true value that ExpressJet would bring to a
>   combination.***

> The Special Committee reaffirmed its confidence in management's ability to
> successfully execute the Company's current strategic plan.  Pat Kelly, Chairman of
> the Special Committee, noted "The ExpressJet Board and management are
> committed to taking all appropriate and necessary actions to enhance value for
> ExpressJet stockholders."

36.    On December 1, 2009, ExpressJet's then CEO Jim Ream announced that he was

retiring from the Company effective January 1, 2010.  The Company announced that defendant

Kelly would succeed Mr. Ream as interim CEO.  SkyWest used this opportunity of the change in

leadership at ExpressJet to again reassert its interest in acquiring the Company on December 2, 2009.

37.     Defendant Kelly met with Jeff Smisek ("Smisek"), Continental's CEO on February 3, 2010.  Smisek and Kelly discussed ExpressJet entering into a strategic transaction with another party, specifically mentioning SkyWest.  Smisek stated that Continental would not object if ExpressJet entered into such negotiations.

38.     Approximately two weeks later, on February 18, 2010, Smisek called defendants Kelly and Bravante to discuss SkyWest's interest in acquiring ExpressJet and Continental's opinion on such an acquisition.  Smisek stated that SkyWest was not interested in acquiring ExpressJet with its current CPA with Continental, but was interested in negotiating a new CPA that would become effective if SkyWest acquired the Company.

39.     In early April 2010, Smisek told defendant Kelly that Continental had entered into preliminary discussions with SkyWest regarding a CPA between the two companies in the event that SkyWest acquired the Company.

40.     On April 19, 2010, ExpressJet announced that the Board had named defendant Hanley as President and CEO of the Company.  Despite his recent appointment, defendant Hanley wasted no time before initiating discussions with SkyWest on May 6, 2010.  That same day, SkyWest delivered to defendants Hanley and Bravante a letter proposal to acquire the Company at $6.00 a share.  Notably, SkyWest's offer was conditioned on the completion of due diligence by both SkyWest and Continental.  In what would become a recurring theme of the negotiations, Hanley discussed SkyWest's proposal with ExpressJet's senior management.

41.     The Board met on May 13, 2010, and discussed SkyWest's proposal.  Unlike the previous time SkyWest offered to acquire the Company, the Board did not form a special committee.  Rather, the Board discussed with Hanley and ExpressJet's senior management how the sale process with SkyWest might unfold.

42.     On May 21, 2010, Hanley and two senior officers of ExpressJet met in New York with representatives of SkyWest. ExpressJet's representatives made a presentation to SkyWest

- 10 -

regarding, among other things, ExpressJet's business, its financial outlook, the projected cost-savings and operational initiatives developed by ExpressJet's management and Seabury Advisors LLC ("Seabury"), a airline consulting firm chosen by Hanley to act as an additional financial advisor to the Company, ExpressJet's five-year plan, and certain valuations of ExpressJet's equity value.

43.   Following the meeting with SkyWest, Hanley spoke with senior management of the Company and certain members of the Board about the meeting. Senior management also held additional discussions with representatives of Goldman Sachs and Seabury.

44.   On May 26, the Board directed Hanley and Goldman Sachs to respond in writing to SkyWest's initial proposal by seeking $7.50 per share in cash. The Board also directed senior management to prepare to announce and implement the cost-savings and operational initiatives developed by ExpressJet and Seabury. The Board reaffirmed the merger price of $7.50 at a meeting on May 28, 2010.

45.   On June 7, 2010, the Company issued a press released announcing that it had commenced Operation: Green Light, which was intended to cut expenses and produce savings of approximately $40 million by 2012. Defendant Hanley commented on the announcement stating that "[w]e believe this Plan will allow the Company to move forward and all ExpressJet stakeholders to benefit from a company that possesses a solid, financial foundation and sustainable profits."

46.   On June 9, 2010, SkyWest countered the Board's offer by stating that it was willing to raise the consideration it offered to $6.50 per share. The Board requested that SkyWest increase its offer to $7.00 per share on June 12, 2010.

47.   On June 15, 2010, Smisek told Hanley that Continental supported SkyWest's acquisition of ExpressJet. The next day, the Board said that it was willing to accept an offer at $6.75 per share. SkyWest agreed to acquire the Company at this price; however, no merger agreement was initially reached.

48.     Over the next month and a half, ExpressJet and SkyWest negotiated the Merger Agreement.  At no time did the Board conduct a market check or solicit alternative bids.  Part of SkyWest's proposal was that its acquisition of ExpressJet would not cause the acceleration of the vesting of restricted stock beyond that provided for in the terms of the related plans and agreements.  The Board met on July 8, 2010, and discussed the effect of this clause on ExpressJet's employees and officers, and, in particular, on defendant Hanley in light of his ownership of a significant number of non-vested restricted stock.  The Board again considered the effect of the Proposed Acquisition on defendant Hanley's compensation on July 14, 2010.  The Board also discussed the treatment of underwater employee stock options.  The Board reached a special agreement with SkyWest, whereby a minimum of 40% of the restricted stock held by defendant Hanley would vest in connection with the Proposed Acquisition.  Further, ExpressJet can pay holders of options issued under the Company's 2002 stock incentive plan $0.10 per option, even though these options have a strike price in excess of the consideration in the Proposed Acquisition.

49.     On August 3, 2010, the Board approved the Merger Agreement.  The Company announced the Proposed Acquisition the next day before the market opened.

## THE PROPOSED ACQUISITION

50.     On August 4, 2010, ExpressJet issued a press release announcing that it had entered into a definitive merger agreement with SkyWest.  The press release announced that ExpressJet had agreed to be bought out by SkyWest for a mere $6.75 per share ($133 million) in cash.  Notably, SkyWest will retain the Company's cash balance of $96 million (including restricted cash).  The press release went on to state, in pertinent part, as follows:

> ExpressJet Holdings, Inc., parent company of regional and charter airline operator, ExpressJet Airlines, Inc., today announced that it signed a definitive merger agreement with SkyWest, Inc. whereby SkyWest, Inc., will acquire all of the outstanding common shares of ExpressJet for $6.75 per share in cash subject to the conditions of the definitive merger agreement.  SkyWest, Inc. advised that its intention is that ExpressJet Airlines will be merged with its wholly-owned

subsidiary, Atlantic Southeast Airlines following the closing of the transaction and receipt of all required regulatory approvals.

Regarding the acquisition, George Bravante, Chairman of the ExpressJet Board, stated, "We believe this transaction provides a significant premium over ExpressJet's current market price for its stockholders and that the combined airline will be able to provide a stable, platform for growth for ExpressJet employees after this transaction closes."

It is anticipated that the combined airline will maintain significant operational presence in each of the hubs ExpressJet currently serves, including Continental's current hub in Houston, Newark/New York and Cleveland, as well as hubs in Chicago O'Hare and Washington Dulles for United Airlines. In addition, it is expected that the vast majority of front-line employee positions will not be impacted by the acquisition.

The Board of Directors of both companies unanimously approved the definitive merger agreement. The transaction is not subject to a financing condition, but is subject to approval by ExpressJet stockholders and to receipt of certain regulatory approvals and customary conditions. The transaction is currently expected to close during fourth quarter 2010.

51.    Upon completion of the Proposed Acquisition, ExpressJet will become a wholly-owned subsidiary of Atlantic Southeast. SkyWest will benefit from substantial synergies, by, among other things, combining the two airlines' headquarters to operate out of Atlantic Southeast's existing facilities in Atlanta, Georgia. According to SkyWest, Atlantic Southeast intends to transition certain existing ExpressJet support functions to Atlantic Southeast and SkyWest upon consummation of the Proposed Acquisition. SkyWest Chief Financial Officer, Bradford Rich stated that "[w]e believe that a full integration into Atlantic Southeast will lead to material and significant expense reductions," during an analyst call on August 4, 2010.

52.    Also, in contemplation of the Proposed Acquisition, Atlantic Southeast negotiated the principal terms of a new, 10-year CPA with Continental. The CPA contains a replacement option whereby Atlantic Southeast would be awarded larger aircraft if Continental decides to pull any of the existing 50-seat aircraft flown by ExpressJet.

53.    The Merger Agreement also contains unreasonable restrictions that serve to deter any higher bidder for the Company. Section 5.3 of the Merger Agreement prohibits ExpressJet from

soliciting any third-party offers. In addition, in the unlikely event that an unsolicited superior proposal does materialize, the Merger Agreement provides SkyWest with the opportunity to match any such bid.

54.     Section 7.3 requires that ExpressJet pay a $4 million fee if it terminates the Proposed Acquisition to accept an unsolicited superior proposal.

### SELF-DEALING

55.     Because the Individual Defendants dominate and control the business and corporate affairs of ExpressJet and have access to material nonpublic information concerning ExpressJet's financial condition and business prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ExpressJet. Therefore, it is a breach of duty for the Individual Defendants to pursue and execute any Proposed Acquisition pursuant to which they will reap disproportionate benefits to the exclusion of obtaining the highest shareholder value. Here, the Individual Defendants placed their own interest first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personnel needs and objectives.

56.     The proposed sale is wrongful, unfair, and harmful to ExpressJet's public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members. Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights via the sale of ExpressJet on terms that do not adequately value the Company. Accordingly, the Proposed Acquisition will benefit defendants and SkyWest at the expense of ExpressJet's shareholders.

57.     As revealed in the Proxy, the Individual Defendants discussed and secured lucrative and unwarranted financial benefits for themselves at the expense of the Company's shareholders. For instance, the Board secured for Hanley that at least 40% of his restricted stock would vest in the Proposed Acquisition. At the minimum of 40% vesting, this agreement gives Hanley an additional $810,000 windfall. This amount is in addition to the change-of-control benefits he is already

receiving, which, according to the Proxy, are worth over $1 million. Thus, Hanley is receiving over $1.8 million from the Proposed Acquisition, despite only being employed by the Company for five months.

58.     The Board also negotiated to ensure that the employees of the Company received unwarranted benefits. According to the proxy, ExpressJet is entitled to pay the holders of options issued under ExpressJet's 2002 Stock Incentive Plan $0.10 per share. ExpressJet will pay employees this amount despite the options being worthless since their exercise price is above the consideration in the Proposed Acquisition.

## THE FAILURE TO MAXIMIZE SHAREHOLDER VALUE

59.     In order to meet their fiduciary duties, the Individual Defendants are obligated to maximize shareholder value, and not structure a preferential deal for themselves. Due to the Individual Defendants' eagerness to enter into a transaction with SkyWest, they failed to implement a process to obtain the maximum value for ExpressJet's shareholders.

60.     For unknown reasons, the Board explicitly refused to solicit additional interest in the Company. The Board also inexplicably refused to consider anything other than an all cash transaction. Finally, the Individual Defendants compounded this breach by failing to conduct a post-agreement market check, despite negotiating the Merger Agreement for a month and a half.

61.     This breach is particularly egregious because the Proposed Acquisition undervalues ExpressJet's immediate and long-term prospects. Notably, ExpressJet has begun to implement Operation: Green Light. Further, the air travel market in general has substantially improved compared to where it was during the recession. SkyWest has stated that it expects to reap significant synergies from the Proposed Acquisition. Nevertheless, the Company's shareholders will not experience the benefits of Operation: Green Light or the synergies from the combined company.

62.     The failure of the Board to negotiate a transaction that maximizes shareholder value is not surprising. Due to their small stock holdings, the Board has little incentive to negotiate for a

higher stock price rather than just accept the immediate cash benefit SkyWest offered them.  In contrast, when Hanley was in danger of losing his restricted stock holdings for no value, the Board negotiated extensively in order to secure an additional $800,000 payment for him.  The following table shows the limited benefit to the Individual Directors of negotiating for a higher stock price for the Company's shareholders:

| ExpressJet shares owned by as of September 2, 2010 | Badalamenti 37,943 | Bravante 48,066 | Clarke 32,025 | Fadel 28,421 | Freudenstein 61,250 |
|---|---|---|---|---|---|
| Value at prices: $6.75 | $256,115 | $324,446 | $216,169 | $191,842 | $413,438 |
| $7.00 | $265,601 | $336,462 | $224,175 | $198,947 | $428,750 |
| $7.50 | $284,573 | $360,495 | $240,188 | $213,158 | $459,375 |
| $8.00 | $303,544 | $384,528 | $256,200 | $227,368 | $490,000 |
| $8.50 | $322,516 | $408,561 | $272,213 | $241,579 | $520,625 |
| $9.00 | $341,487 | $432,594 | $288,225 | $255,789 | $551,250 |
| $9.50 | $360,459 | $456,627 | $304,238 | $270,000 | $581,875 |
| added value at $6.75 vs $9.50 | $104,343 | $132,182 | $88,069 | $78,158 | $168,438 |

| ExpressJet shares owned by as of September 2, 2010 | Haberkorn 47,666 | Hanley 120,000 | Kelly 99,645 | Ngo-Burns 70,827 | Reitz 48,266 |
|---|---|---|---|---|---|
| Value at prices: $6.75 | $321,746 | $810,000 | $672,604 | $478,082 | $325,796 |
| $7.00 | $333,662 | $840,000 | $697,515 | $495,789 | $337,862 |
| $7.50 | $357,495 | $900,000 | $747,338 | $531,203 | $361,995 |
| $8.00 | $381,328 | $960,000 | $797,160 | $566,616 | $386,128 |
| $8.50 | $405,161 | $1,020,000 | $846,983 | $602,030 | $410,261 |
| $9.00 | $428,994 | $1,080,000 | $896,805 | $637,443 | $434,394 |
| $9.50 | $452,827 | $1,140,000 | $946,628 | $672,857 | $458,527 |
| added value at $6.75 vs $9.50 | $131,082 | $330,000 | $274,024 | $194,774 | $132,732 |

63.     As a result of defendants' conduct, ExpressJet's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  The consideration ExpressJet shareholders will receive does not

reflect the true inherent value of the Company, which was known only to the Individual Defendants, as directors and officers of ExpressJet, and to SkyWest, which was given access to the Company's confidential non-public information through the due diligence process.

## THE MATERIALLY MISLEADING PROXY

64.     In order to secure shareholder approval of this unfair deal, defendants filed the materially misleading Proxy. The Proxy, which recommends that ExpressJet's shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Company. Specifically the Proxy omits/or misrepresents the material information set forth below in contravention of the Individual Defendants' fiduciary duty of candor and in violation of §14(a) and §20(a) of the Exchange Act.

65.     ***The basis for the Board's belief that no financial or strategic parties would be interested in acquiring ExpressJet other than SkyWest***. Defendants' failure to disclose all material information about potential financial or strategic parties, or lack thereof, renders, among other sections, the following text on page 22 misleading:

> [T]he Board preliminarily concluded that financial buyers such as private equity firms were not likely to be plausible candidates to acquire ExpressJet, and that strategic buyers such as airlines other than SkyWest were not likely to see the strategic benefit of, or have the financial capability to complete, a business combination with ExpressJet.

66.     These statements are materially misleading and omit material information because they are attempting to justify the fact that ExpressJet and Goldman Sachs made no effort to ascertain the interest of financial parties or strategic parties other than SkyWest via an auction process or some sort of market check. Without knowing the basis for these bald statements concerning the purported lack of interest of other strategic parties, ExpressJet shareholders have no way to determine whether the Board took all steps necessary to maximize shareholder value before agreeing to the Proposed Acquisition.

67.   ***The basis for the Board's belief that it was "highly unlikely" that a potential acquirer would offer more for the Company.***   Defendants' failure to disclose all material information about potential acquirers, or lack thereof, renders, among other sections, the following text on page 31 misleading, "it was highly unlikely that another potential acquirer would offer a higher price to acquire ExpressJet."

68.   This statement is materially misleading and omits material information because defendants are attempting to justify the fact that ExpressJet and Goldman Sachs made no effort to ascertain the interest of potential acquirers other than SkyWest in ExpressJet via an auction process or some sort of market check.  Without knowing the basis for these bald statements concerning the purported lack of interest of other strategic parties, ExpressJet shareholders have no way to determine whether the Board took all steps necessary to maximize shareholder value before agreeing to the Proposed Acquisition.

69.   ***Goldman Sachs' opinion regarding potential acquirers other than SkyWest.***   Defendants fail to disclose the basis for Goldman Sachs' opinion that no other strategic buyer was likely to emerge and whether any financial buyer might be interested in the Company renders the following text on page 21 of the Proxy misleading: "The Goldman Sachs representatives noted that other than potentially SkyWest, a strategic buyer was unlikely to emerge."

70.   This statement is materially misleading and omits material information because defendants are attempting to justify the fact that ExpressJet and Goldman Sachs made no effort to ascertain the interest of potential acquirers other than SkyWest in ExpressJet via an auction process or some sort of market check.  Without knowing the basis for these bald statements concerning the purported lack of interest of other strategic parties, ExpressJet shareholders have no way to determine whether the Board took all steps necessary to maximize shareholder value before agreeing to the Proposed Acquisition.

71.  ***What SkyWest thought was objectionable about ExpressJet's CPA with Continental***.  Defendants omit material information on page 21 explaining why Smisek, Continental's CEO, stated that SkyWest was not interested in acquiring the Company with its current CPA with Continental and on page 23 explaining why SkyWest's offer to acquire the Company was conditioned on the entrance of a new CPA.

72.  The information concerning the Company's CPA and SkyWest's objections to it are material to ExpressJet shareholders because it concerns the Company's value as a stand alone entity and in a transaction with SkyWest.  Without this information shareholders will not know whether the consideration in the Proposed Acquisition is fair

73.  ***The basis for the Board to demand SkyWest increase the consideration in the Proposed Acquisition to $7.50 and then $7.00***.  Defendants' failure to disclose this material information renders misleading, among other sections, the following text on page 24, "the Board directed Mr. Hanley and Goldman Sachs to respond in writing to SkyWest's initial proposal by seeking $7.50 per share in cash" and the following text on page 26, "[f]ollowing the executive session, the directors instructed Goldman Sachs to (i) propose to Raymond James that SkyWest increase its offer to $7.00 per share."

74.  These statements omit material information because the consideration in the Proposed Acquisition is only $6.75, despite demands from the Board that SkyWest increase its offer price to $7.50 and later $7.00.  This information is material because without it shareholders will not know whether the consideration in the Proposed Acquisition is fair or why the Board in such a short time substantially decreased the amount of consideration it was willing to accept for the Company.

75.  ***The basis for the Board's refusal to consider SkyWest stock as part of the consideration offered***.  Defendants' failure to disclose this material information renders misleading, among other sections, the following text on page 25, "Goldman Sachs informed the Board that Raymond James had indicated that SkyWest was willing to raise its offer to $6.50, and expressed its

willingness to pay a portion of the merger consideration in SkyWest common stock. Consistent with the Board's prior directions, representatives of Goldman Sachs had rejected the proposal that SkyWest common stock be included as part of the merger consideration, and the Board confirmed that rejection."

76.     This statement is materially misleading because it omits any reasons for the Board's refusal to consider stock as part of the consideration. According to the Proxy, at least at one point, SkyWest was willing to increase its offer for the Company if the Board would accept some consideration in the form of stock. The Board rejected this approach. This information is material because without it shareholders will not know whether the consideration in the Proposed Acquisition is fair.

77.     *The basis for Continental's opinion that the Company was "not economically stable."* Defendants' failure to disclose this material information renders misleading, among other sections, the following text on page 26, "Mr. Smisek discussed Continental's concern that ExpressJet was not economically stable and that any continued business relationship with ExpressJet was an economic operating risk." This statement omits material information concerning why Smisek thought that the Company was not economically stable. This information is material because it relates to the ability of the Company to continue to progress on a go-forward basis, and thus, whether shareholders of the Company should vote in favor of the Proposed Acquisition.

78.     *The total amount that the Company will pay holders of ExpressJet's 2002 Stock Incentive Plan.* Defendants' failure to disclose this material information renders misleading, among other sections, the following text on pages 36 and 37:

> Pursuant to the terms of agreements between ExpressJet and each holder of outstanding options to purchase ExpressJet common stock (all of which have an exercise price in excess of the per share merger consideration), each such option will be cancelled; provided that ExpressJet is entitled to pay the holders of options issued under ExpressJet's 2002 Stock Incentive Plan $0.10 per share of ExpressJet common stock issuable upon exercise of such option as consideration for the release of any and all rights that such holder has or may have had to purchase shares of ExpressJet

common stock or any other security upon exercise of such option. Each current and former executive officer will receive less than $1,000 in exchange for the release of his or her rights under such options.

\* \* \*

… As described above, pursuant to the terms of agreements between ExpressJet and each holder of outstanding options to purchase ExpressJet common stock (all of which have an exercise price in excess of the per share merger consideration), each such option will be cancelled; provided that ExpressJet is entitled to pay the holders of options issued under ExpressJet's 2002 Stock Incentive Plan $0.10 per share of ExpressJet common stock issuable upon exercise of such option as consideration for the release of any and all rights that such holder has or may have had to purchase shares of ExpressJet common stock or any other security upon exercise of such option. Each non-employee director will receive less than $200 in exchange for the release of his or her rights under such options. No non-employee director holds any shares of restricted stock.

79.     This statement omits material information concerning how much in total the Company will pay to holders of options granted pursuant to ExpressJet's 2002 Stock Incentive Plan. This information is material because it relates to whether the Board negotiated improperly to give employees of the Company an additional cash benefit to the detriment of shareholders.  Further, by putting in the amount that the executives and directors will receive pursuant to this plan, the defendants imply that they were not motivated by improper influences in negotiating this benefit for the Company's employees.   Shareholders will only be able to discern the truth of this implication if the Proxy discloses the total cost of paying holders of these options.

80.     *The data and inputs underlying Goldman Sachs' Analysis of Multiples at Offer Price*. In defendants' discussion of Goldman Sachs' Analysis of Multiples at Offer Price on page 39 of the Proxy, defendants fail to disclose: (i) which companies comprised the "group of selected peer companies"; and (ii) the Adjusted Enterprise Value/EBIDTAR multiple for each of those peer companies. This information is material because this analysis assesses the consideration offered in the Proposed Acquisition  as compared to multiples at which comparable companies trade, and, without the information set forth above, shareholders are unable to independently assess whether the

analysis set forth in the Proxy is an adequate measure of this value assessment, and in turn, what, if any, weight to place on Goldman Sachs' Fairness Opinion.

81.   ***The data and inputs underlying Goldman Sachs' Illustrative Discounted Cash Flow ("DCF") Analysis***. In defendants' discussion of Goldman Sachs' DCF Analysis on page 39 of the Proxy, defendants omit: (i) the basis for using discount rates ranging from 21.50% to 23.50%; (ii) the estimates of the Company's weighted average cost of capital; and (iii) the basis for using perpetuity growth rates of 0.0% to 3.0%. This information is material because the DCF analysis supplies a range of values for the Company's stock, and without the information set forth above, shareholders are unable to assess whether Goldman Sachs' valuation is an adequate measure, and in turn, what, if any, weight to place on Goldman Sachs' Fairness Opinion.

82.   ***The data and inputs underlying Goldman Sachs' Precedent Airline Industry Transactions Analysis***. In defendants' discussion of Goldman Sachs' Precedent Airline Industry Transactions Analysis on pages 40-41 of the Proxy, defendants fail to disclose: (i) the criteria for including or excluding a precedent transaction in Goldman Sachs' analysis; (ii) why Goldman Sachs' calculated EBITDAR by adding capitalized leases at 7.0 x LTM aircraft rental expense. This information is material because this analysis assesses the consideration offered in the Proposed Acquisition as compared to multiples in other comparable transactions, and, without the information set forth above, shareholders are unable to independently assess whether the analysis set forth in the Proxy is an adequate measure of this value assessment, and in turn, what, if any, weight to place on Goldman Sachs' Fairness Opinion.

83.   ***The data and inputs underlying Goldman Sachs' Illustrative Present Value of Future Share Price Analyses***. In defendants' discussion of Goldman Sachs' Illustrative Present Value of Future Share Price Analysis on page 42 of the Proxy, defendants omit: (i) the basis of calculating enterprise value using a multiple of 5.5x to estimates of 2011 to 2014 EBITDAR, especially in light of the median EBITDAR used in Goldman Sachs own analysis on page 39 of the

proxy is between 5.7x to 6.0x; (ii) the basis for applying multiples of enterprise value to EBITDA of 4.5x and 5.5x for its public multiple based valuation; (iii) the basis for applying multiples of enterprise value to EBITDA of 9.0x and 11.0x for its precedent transactions multiple based valuation, particularly in light of median and mean used in Goldman Sachs own analysis on page 41 of the proxy are both higher than 11.0x, as is every transaction identified since 2007; and (iv) the basis for discounting the resulting values of its analysis using a rate of 23.54%. This information is material because this analysis supplies a range of values for the Company's stock, and without the information set forth above, shareholders are unable to assess whether Goldman Sachs' valuation is an adequate measure, and in turn, what, if any, weight to place on Goldman Sachs' Fairness Opinion.

84.    The Individual Defendants were aware of their duty to disclose the foregoing material information in the Proxy, and acted with at least negligence in failing to ensure that this material information was disclosed in the Proxy. Absent disclosure of this material information, shareholders are unable to make an informed decision about whether to vote in favor of the Proposed Acquisition, and are thus threatened with irreparable harm.

## CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action individually and as a class action pursuant to on behalf of all holders of ExpressJet stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

86.    This action is properly maintainable as a class action.

87.    The Class is so numerous that joinder of all members is impracticable. According to ExpressJet's SEC filings, there are more than 17 million shares of ExpressJet common stock outstanding.

88.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the defendants violated §14(a) and §20(a) of the Exchange Act and SEC Rule 14a-9 by filing the materially misleading Proxy;

(b)     whether the Individual Defendants have breached their fiduciary duties with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(d)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best value reasonably available under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(e)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

(f)     whether ExpressJet, SkyWest, Southeast Airlines, or Express aided and abetted the Individual Defendants' breaches of fiduciary duties; and

(g)     whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

89.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

90.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

91.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

92.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

93.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Against the Individual Defendants, ExpressJet, and SkyWest for Violations of §14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95.     The Individual Defendants, ExpressJet, and SkyWest disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

96.     The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants, ExpressJet, and SkyWest.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's assets.

97.     In so doing, the Individual Defendants, ExpressJet, and SkyWest made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the Exchange Act and SEC Rule 14a-9

promulgated thereunder. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy.

98.     The Individual Defendants, ExpressJet, and SkyWest were at least negligent in filing the Proxy with these materially false and misleading statements.

99.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Acquisition. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to shareholders.

100.    By reason of the foregoing, the Individual Defendants, ExpressJet, and SkyWest have violated §14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

101.    Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants and SkyWest for
### Violation of §20(a) of the Exchange Act

102.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein..

103.    The Individual Defendants acted as controlling persons of ExpressJet within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ExpressJet, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

104.    Each of the Individual Defendants and SkyWest was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition. They were thus directly involved in the making of this document.

106.    SkyWest also had direct supervisory control over composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy. SkyWest, in fact, disseminated the Proxy and is thus directly responsible for materially misleading shareholders because it permitted the materially misleading Proxy to be published to shareholders.

107.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants and SkyWest were each involved in negotiating, reviewing and approving the Proposed Acquisition. The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which had input from both the directors and SkyWest.

108.    By virtue of the foregoing, the Individual Defendants and SkyWest have violated §20(a) of the Exchange Act.

109.    As set forth above, the Individual Defendants and SkyWest had the ability to exercise control over and did control a person or persons who have each violated §14(a) of the Exchange Act

- 27 -

and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, ExpressJet will be irreparably harmed.

## COUNT III

### For Breach of Fiduciary Duties Against the Individual Defendants

110.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

111.    The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith and independence owed to the public shareholders of ExpressJet and have acted to put their personal interests ahead of the interests of ExpressJet's shareholders.

112.    By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from ExpressJet.

113.    The Individual Defendants have violated their fiduciary duties by entering ExpressJet into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on ExpressJet's shareholders.

114.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the shareholders of ExpressJet because, among other reasons:

(a)    they failed to take steps to maximize the value of ExpressJet to its public shareholders;

(b)    they failed to properly value ExpressJet and its various assets and operations; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the Individual Defendants' own interrelationships or connection with the Proposed Acquisition.

115.    Because the Individual Defendants dominate and control the business and corporate affairs of ExpressJet, have access to private corporate information concerning ExpressJet's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ExpressJet which makes it inherently unfair for them to pursue and recommend any Proposed Acquisition wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

116.    By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

117.    The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

118.    As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of ExpressJet's assets and operations.  Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Merger Agreement's terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

119.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT IV

### For Aiding and Abetting Breach of Fiduciary Duty Against ExpressJet

120.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

121.    The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

122.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

123.    ExpressJet colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

124.    Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT V

### For Aiding and Abetting Breach of Fiduciary Duty Against SkyWest, Southeast Airlines and Express

125.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

126.    The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

127.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

128.    SkyWest, Southeast Airlines, and Express colluded in or aided and abetted the Individual Defendants breaches of fiduciary duties, and were an active and knowing participant in

the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

129.     SkyWest, Southeast Airlines, and Express participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests. SkyWest, Southeast Airlines, and Express obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendant's breaches. SkyWest and Southeast Airlines will benefit, *inter alia*, from the acquisition of the Company at an inadequate and unfair consideration if the Proposed Acquisition is consummated.

130.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.     Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition unless and until they comply with their duties under state law and §14(a) and §20(a) of the Exchange Act to provide shareholders with all material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's assets both as stand-alone entity and as an acquisition for SkyWest;

D.     Rescinding, to the extent already implemented, the Merger Agreement;

E.     Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

F.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.    Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATE: September 10th, 2010

THE WARNER LAW FIRM
PAUL T. WARNER

_____
PAUL T. WARNER
S.D. TEX BAR NO. 25143
11123 McCacken Lane, Suite A
Cypress, TX 77429
Telephone: (281) 664-7777
Facsimile: (281) 664-7774

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

520036